Good morning. My name is Leslie Stovall. I represent the appellant. I'd like to reserve five minutes for rebuttal. The central issue in this case is whether the Football League documents which were disclosed in the underlying case are privileged. The district court order granting terminal sanction was based upon the finding that those documents, the documents disclosed in the underlying case, were in fact privileged. The district court erred in finding privilege in that the court did not require Ronaldo to prove privilege. Secondly, the court, the district court ignored Ronaldo's disclaimer of authenticity of those documents which were disclosed in the district court case. The district court also ignored the waiver of privilege, both an express or voluntary waiver and an implied waiver of privilege by Ronaldo in the underlying case. Finally, the district court made a number of factual findings that were not supported in the record. They made a finding that the documents were stolen. There was absolutely no evidence in the record that those documents had been stolen, that there was a relentless use of those documents in litigation or in discovery, and there was no evidence in the record to support that allegation or that finding either. When you say there's no evidence that the documents were stolen, when you contacted John at Football Leagues, did you think you were contacting the public library? No, Your Honor. Okay. I mean, there were problems with the hack, were there not? There was a hack that made those documents available. You know, that's exactly the point I was trying to make to the district court, is that we don't know that the documents that John at Football Leagues delivered to me were the same documents that were hacked. And furthermore, we don't know if the documents that were disclosed in this case are accurate copies of the original communications between Ronaldo, Ronaldo's lawyers. There is no evidence in the record to establish either of those facts. So, no, there is no evidence in the record that establishes these documents. The documents disclosed in this case were, in fact, stolen. And there's no evidence in this record to establish that the documents disclosed in this case were, in fact, accurate copies of the original communications. And Ronaldo offered no evidence to support that position. And in fact, the court in reaching that conclusion never made a finding of privilege. What she said, both the magistrate judge and district court judge said, was, we're finding that they did not waive privilege. But there was no evidence to establish in the first place that those documents were, in fact, privileged. So, you're saying there's no evidence that they were privileged in the first place? That's correct. So, if a client is talking to his lawyers about an incident with someone, you wouldn't think that would be privileged? Well, for example, communications you had with your client, I would assume you would consider those to be privileged. Sure. So, why wouldn't these be privileged? That's correct. And if I were in Ronaldo's position, I would have come into the court and I would have had one of the persons who were involved in that communication or myself prepare an affidavit or a declaration and submit it saying, these are true and correct copies. These are accurate copies of communications which I had with my lawyers or which occurred between my lawyers. But you will not find that in the record of this case. So, you don't think the district court could just look at these and be, this is self-evident that they're privileged? I do not. Do you have any authority that says that a district court cannot look at communications between a client and lawyer and they actually need a client or lawyer to come into court to say they are privileged? Well, you know, it's a very basic rule, I think, of authentication. But this is not for trial. This is all pretrial litigation, correct? So, the authentication rules are a little bit different. I don't think so. I think when you have to prove privilege, the proponent has to offer evidence. They have to, in an affirmative way, claim those documents. And they have to also establish that these are communications between individuals. And I cited the Grand Circuit has said, look, you can have communications between a lawyer, documents that appear to be communications between a lawyer and a client. But you also have to establish that those individuals actually received those documents. And you also have to establish that or disclose whether any other person received those documents. And finally, you have to establish that there was no waiver of privilege. And none of those requirements were met in this case. What has happened in this case is Rinaldo has said, oh, these are privileged. Just look at the face of these documents. And at the same time, he's disclaimed authenticity. Rinaldo has repeatedly disclaimed authenticity of the documents disclosed in this case, which is, I found no case, no case where a court could find privilege after the proponent or their authenticity. I don't know how you can do that. But that's exactly what has happened in this case. So it wasn't simply, here's these documents. These are my documents. These are privileged. This is who received these documents. There's been no waiver. In this case, unlike any other case that I know of, there's this claim of privilege. On the face of the documents, they appear privileged, but we're disclaiming their authenticity. Well, let me, I'll ask the question in reverse. Do you think these are communications between Rinaldo and his lawyers? I don't know. I will say you really, you really don't know. Do you think they're fake? Well, you think they're real? From the point of view of Rinaldo. Well, why did you seek them then? Well, I was interested, first of all, I had felt that any privilege attached to documents that I've received from John were, was waived. And that's the Teradata. That's a different argument than whether they are privileged in the first instance. So whether the privilege is waived is a different issue than whether or not the documents are privileged documents. I'm sorry? That's a different point. Whether or not the privilege was waived is a different point. I understand. Than whether the documents were themselves privileged in the first instance. So we ask you, did you think the documents were privileged when you asked for them or when you saw them? Did you think they were privileged? Well, let me answer this way. I asked for... That's kind of a yes or no question. No. You didn't think they were privileged? I did not know. Okay. If you had to guess, what would you have guessed? They appeared to be communications between Rinaldo and Rinaldo's attorneys. That's correct. And I guess the next question I would ask is that why didn't that set off red lights right there? For me, I had looked at the Teradata case and also the Dukes case. I felt that the publication of those documents, not these documents that were disclosed, but other Walmart, excuse me, other documents relating to Rinaldo, had... And Rinaldo's failure to do anything to stop or to recover those documents or to seek to have them declared privileged waived the privilege. But once the district court determined otherwise, you didn't accept that ruling? Determined that they were privileged? They were privileged. I did. You did accept that ruling? Yes. But didn't you continue to refer to those documents? No. If you look at the record of the case, what happens is ECF-72 is the district court's order. And that order was... There was a motion to compel arbitration. There was a motion to strike the documents. And the court struck the documents in that order, ECF-72, saying that privilege had not been waived by prior disclosures. And from that point up until the time of ECF-111, which was the motion for terminal sanctions, there were no further disclosures by me or by, in the plaintiff's case, of those documents. None. And you'll not find any disclosure in the documents or on the issue of privilege between that period of time. And that would be ECF-72 and ECF-111. None. So it's your representation to the court that once the district court made the determination that the privilege had not been waived, you no longer reference those documents in any filings. Is that your representation to the court today? Yes. And there were no represent... And let me be very clear about this. There are no filings. There were no representations to the court with regards to those documents. So what's your understanding as to why the district court decided that terminating sanctions were appropriate? What was that based on from your perspective? Well, it was based upon the... Rinaldo's attorneys asserted that I had failed to disclose an additional 400 documents that were contained in the Las Vegas Metropolitan Police Department investigative file, that I had repeatedly sought or disclosed documents in pleadings. But you said that's not true. That is not true. And I've cited the court to the record. And you can look between ECF-72 and ECF-111 and you will not find any pleadings filed where I am referencing the Football League documents. More importantly, it was once the court made that finding, there were discussions with regards between counsel with regards to what that order meant, that's ECF-72, as to whether or not there were... What was the scope of the finding of privilege? And in fact, Rinaldo's attorneys eventually conceded in ECF-111, I believe it was ECF-111, that I had agreed that any document obtained from John at Football Leagues would not be used in this case or used in discovery. So there was no... From Rinaldo's side, they admitted that I had said I would not use those documents in discovery. That's where it made that very clear. And it's May 25th, 2021, where I stated that I didn't think privilege extended to communications or documents exchanged between the defendant or defendant's attorneys and the mediator, the defendant or defendant's attorneys and the plaintiff's attorney, or the plaintiff's attorney and the mediator. I stated that in my opinion, these communications and documents could be used in discovery. Nevertheless, I conceded and Rinaldo's attorneys admitted that I would not use any documents that were obtained from John at Football Leagues in discovery or in the case. So I think it requires taking a close look at the record of this case, whether or not, and I'm certain there were not... These documents were not used. What then happened is there was a request for the Los Angeles Metropolitan Police Department records by Rinaldo's attorneys. And that request was made in April, April 27th, 2021. Those documents... Well, it was made in April. And on April 27th, 2021, Rinaldo's attorneys served a second supplemental Rule 26 disclosure. And in making that disclosure, they did not withhold, they didn't redact or otherwise ask the court to determine whether any of the documents in that file were privileged. Now, what was contained in that file was a unredacted copy of ECF, of the Football League documents, which I had disclosed as Exhibits 4 and 5 of ECF 44. There was also an additional 400 pages of documents, which everyone's referred to as Football League documents. And the source of those documents were not known. And no one's finding as to what those documents were or where they came from. And those were also attached to ECF 111 as Exhibit P. So, Rinaldo then voluntarily disclosed all of the Football League documents in support of their motion for terminal sanctions. And as I understand the rule, the voluntary disclosure of those Football League documents constituted a waiver of privilege. And I cited a number of cases that support that. So, even if the court were to find that there was, these documents were privileged, Rinaldo's handling of the documents later amounted to a voluntary disclosure of those documents. Did you want to say it's in time for rebuttal? Yes, I did. Thank you very much. Thank you, counsel. Good morning, Your Honors, and may it please the court. My name is Kendalee Works, and I, along with Healey Cipolletti and Peter Christiansen, represent Cristiano Rinaldo, the appellee in this matter. To start today, Your Honor, I don't want to belabor the facts, but the timing and sequence of events here is crucial to a number of issues before the court today, especially with regard to the allegation that the crime fraud exception should apply to eviscerate the attorney-client privilege. Before I get to the timing of events, though, I do want to address a couple of the questions that Your Honors had for my colleague. The first being whether or not there was any awareness that the Football League's documents were attorney-client privilege communications and work product. And the court needs only look as far as there's various email correspondence, but I would point the court to Excerpt of Record ER0948-949. That is email correspondence from John at Football League to Mr. Stovall, and included is Mr. Stovall's email on behalf of that absolutely call for disclosure of attorney-client privilege communications and work product. And I can quote here, he's requesting any documents that John at Football League may have regarding the sexual assault, I would say the alleged sexual assault of Ms. Mayorga, including but not limited to, number two, the employment of attorneys and investigators by Rinaldo to investigate my client, her family, witnesses, and friends after the sexual assault. He goes on to request number three, the employment of attorneys and investigators to represent and defend Rinaldo. And number four, especially concerning the reporting and communications of the attorneys and investigators that investigated Katie Mayorga, her family, witnesses, friends, and the attorney Katie hired to represent her. Number five, the reporting and communications of the attorneys and investigators representing and defending Rinaldo following the sexual assault through the negotiations and conclusion of the settlement and non-disclosure agreement. And this court only need to go as far as Ms. Mayorga's reply brief in this case. Counsel, we've read the briefs. I wanted to ask you about counsel's representations that there were no disclosures in filings once the district court determined that the privilege was not waived. Do you agree with that? Absolutely not, Your Honor. So to start, there were disclosures when we moved her case terminating sanctions. Ms. Mayorga's counsel quoted at length to the privileged communications and documents, the football links. Pages and pages are contained in the opposition to the motion for case terminating sanctions. Ms. Mayorga also filed a motion for in-camera review subsequent to the motion for case terminating sanctions in which Ms. Mayorga again quotes four pages and pages to the football leaks, attorney-client communications, and work product type documents. It's evident on the face of those quotations which are inserted by counsel, by my colleague, that those communications are in fact correspondence among lawyers representing Mr. Rinaldo as well as their observations, thoughts, and strategy regarding defense of the allegations. Obviously work product, law school 101 to anyone who's been practicing particularly as long as my colleague. But beyond that, Your Honor, through the course not just in pleadings and the filings, beyond that in correspondence regarding discovery, and this is in the court's order, discovery and scheduling order, there had been numerous communications among counsel. This is a declaration that I authored before the court with respect to documenting my communications with counsel for Ms. Mayorga in which Ms. Mayorga, through counsel, continued to insist that although the issue was limited to her capacity to consent to the settlement agreement, that the communications among lawyers, which counsel only could have derived from the football documents themselves, continued to be relevant. Counsel requested the depositions of Mr. Rinaldo and his lawyers, continued to insist that he would question those lawyers regarding their investigation of Ms. Mayorga. It was counsel's position before the district court with respect to the discovery dispute that Mr. Rinaldo's lawyer's observations and knowledge of Ms. Mayorga were somehow relevant. The district court attempted to disabuse Ms. Mayorga's counsel of that notion on several occasions. In fact, in the discovery order, it reiterates that Ms. Mayorga, plaintiff, appeared laser focused on expanding the scope of discovery, expanding the scope to something that was not before the court. The allegation made today that Mr. Rinaldo's counsel, being me, somehow conceded that counsel for Ms. Mayorga agreed to not use the football leaks documents is also absolutely false, and that appears in the declaration of myself in support of the motion for case terminating sanctions. Specifically, what I conceded is that Mr. Stovall agreed not to use as deposition exhibits the football leaks documents themselves. There was never any agreement on the part of Ms. Mayorga or her counsel that they would not use the information gleaned from their extensive review, digestion, and use of the football leaks documents in order to conduct discovery and in order to only look as far as the complaint, because that was the first time, Your Honor, to your question, that the football leaks documents were used extensively. Unfortunately, Mr. Rinaldo and his counsel were unable from the face of the complaint to glean that attorney-client privilege communications were the basis of that complaint, because as the district court astutely observed, both the first verified state court complaint that was filed in September of 2018 and the subsequent federal, which was voluntarily dismissed to pursue the federal court action before the court today, that was filed in January of 2019. Those complaints both appear very carefully worded to omit any reference to the word attorney, to the word lawyers, although the verified state court complaint named Doe's and Rose, which is not done in the federal court, so it's absent from that complaint. There are continued references to Rinaldo and his team of professional reputation fixers. There's never any reference to lawyers, although counsel for Ms. Mayorga knew the identity of the lawyers from the football leaks documents themselves. Those lawyers and agents are never named individually in the state court complaint, nor are they named in the federal court complaint. It's very carefully worded, so that the review of attorney-client privilege is not obvious from the complaint itself. And in fact, it was not until Mr. Stovall disclosed, on behalf of Ms. Mayorga, disclosed the football leaks documents as exhibits to his opposition to motion to come out arbitration, that Mr. Rinaldo and his counsel were aware that Ms. Mayorga had possessed those documents. And at that point, immediately, the next day, after receipt of the service of the filing with the attached exhibits, our office sent a letter to Ms. Mayorga's counsel informing him that those documents were privileged, that Mr. Rinaldo was asserting the privilege, the attorney-client privilege and work product privilege, that we were not waiving that privilege by any means, and we informed counsel for Ms. Mayorga that we would be filing a motion to strike the football leaks documents, which we ultimately did. We also went so far as to get a stipulation on record. The documents are the entire opposition to the motion to arbitration was filed under seal. We also got an additional stipulation that those two exhibits containing the football leaks documents would remain under seal, unless and until the district court made a determination as to whether or not the documents should be stricken. The documents were ultimately stricken. Counsel, do you know of any reason why your opposing counsel would have contacted football leaks other than to get documents that would not otherwise be available because they're privileged in work product protection? Would there have been, to your knowledge, any reason for him to do that? Your Honor, there would not have been any other reason other than to request receipt of the counsel's own request to football leaks, specifically called for the disclosure of attorney-client privilege. And in fact, during the hearing on the motion for case terminating sanctions, counsel for Ms. Mayorga conceded that he had requested the documents from other sources, perhaps more reputable arguably, namely Der Spiegel and Ms. Mayorga's former counsel. He was rebuked in those requests. Der Spiegel would not provide him with those documents, so he stated on the record to the district court, to the magistrate judge, that he went specifically to football leaks because he could not obtain those documents from any other source. And opposing counsel says that your client did nothing to protect or try to recover the documents. Is there an indication in the record of your seeking injunction and other relief to Mr. Rinaldo's former counsel, that would be Carlos Osorio de Castro, in which he affirms, and we also provided German documents from German courts where Mr. Rinaldo requested the injunction, we provided a certified translation of those documents. And Mr. de Castro also affirmed that upon learning of Der Spiegel's publication initially of the football leaks documents, that's when they became aware that there had been a hack. And on behalf of Mr. Rinaldo, they did go to the German courts seeking injunctive relief. So not only were there protections in place as documented in Mr. de Castro's declaration to secure their own electronic files against cyber hack, which unfortunately did not succeed, there was additional action on the part of Mr. Rinaldo and his counsel to seek injunctive relief to prevent further disclosure, dissemination of those documents. Additionally, when we, of course, we first learned, we informed counsel, filed the motion to strike that was stricken. It was originally stricken by the magistrate, Judge, your honors. So subsequent to that striking order, or recommendation by the magistrate, there was an objection filed before the court with the district court. That objection, likewise, to the court's earlier point, cited at length to the football leaks documents and the attorney-client privilege communications documents. Again, fortunately, Ms. Mayorga's pleadings were all filed under seal. So those remain sealed and not before the public eye, but nevertheless, it was a continued use of the documents by Ms. Mayorga and her counsel to prosecute her case. Counsel, the imposition of terminating sanctions means that the plaintiff can no longer proceed with her case against your client, correct? That's correct, your honor. That's a pretty drastic result. Would you agree? Why is that warranted? Why, because of her attorney's actions, why is it warranted that this plaintiff no longer can proceed with her case? It's absolutely a drastic sanction, your honors, the most severe of sanctions. And it's appropriate in this case, as the district court and the magistrate judge astutely observed, because there's no other sanction that will suffice to cure the prejudice to Mr. Rinaldo and his ability to defend the case. And that's because, and the court can look in the record in the Las Vegas Metropolitan Police Department's file and see that in 2018, the first time that Ms. Mayorga had contact with law enforcement for the better part of a decade, when asked questions regarding the incident and her recollection, she specifically pointed to the pile of Football League's documents before her, this is in the transcript of her reported statement, to fill in the blanks of her and I'm paraphrasing here, but something to the effect of, well, what those documents say is this, or those documents say this happened. And so it was unclear, and the court observed that it would be impossible to determine, particularly after the lengthy passage of a time of nearly a decade, more than a decade by the time it would have gone to trial. It was unclear what portion of even the complaint, which is derived from the Football League's documents, and Ms. Mayorga's recollection of the events would be derived from her review and digestion of the Football League's documents versus her actual recollection of events that transpired back in 2009. And so, because the court could never separate out those issues, it determined that there was no lesser sanction that would cure the prejudice. And what's clear is that, and if I can address the authentication issue, the authentication issue has been raised before that we did not authenticate the documents. The argument that Ms. Mayorga makes regarding the documents being admissible hearsay or admissible because they were not authenticated is new and likely not properly considered by this case. The circumstances of this case, which is a situation created by Ms. Mayorga and her counsel, are such that if Mr. Rinaldo were to authenticate the documents or have a lawyer come in and authenticate those documents, by the plaintiff and her own counsel's doing, she is already in possession and has reviewed, digested, and utilized those documents to prosecute her case. For Rinaldo or his counsel to authenticate the documents and say, yes, these are true and correct copies, would require an additional waiver or would require a waiver of the attorney-client privilege. Because under the facts of this case, which a predicament uniquely created by the plaintiff and her counsel, Mr. Rinaldo cannot authenticate those documents. But regardless, there's been no case cited stating that in order to prove privilege, you have to have admissible, authenticated documents. As Your Honor pointed out, this is not trial. And in fact, the heart of the argument here is that these documents are, by their very nature, inadmissible. No one is seeking to admit them, but it is self-evident from the face of the documents, as the district court also observed on a factual basis. Many of these documents are marked conspicuously as attorney- client privilege. And so there's no mistake, even if you're not a lawyer, when you look at these documents, in the subject line, it says they are attorney-client privilege communications and work product. Council this morning also addressed the argument that Mr. Rinaldo somehow waived the privilege or didn't properly assert it because there was no privilege log provided. As Your Honors know, Rule 26, both under Nevada law and federal law of the civil procedure rules, requires a privilege log in order to enable a party who doesn't have access to the documents without revealing the nature of the privilege itself. It enables the person objecting to the privilege or potentially objecting to the privilege to ascertain what the nature and scope of that privilege may be. Here, Ms. Mayorga and her counsel rendered a privilege log moot because they already had and reviewed and digested the contents of the documents. There's no question that they were aware of the privileges asserted. But even if a privilege log or specific identification of the documents had been required, Mr. Rinaldo, through counsel, provided in the motion to strike, and I can cite it if Your Honors want the additional cite, but we provided additional citations specifically to hundreds of the Football League's documents, categorizing them either as communications with Bates numbers cited. Hundreds of those documents are specifically identified as to the basis and nature of their privilege, even if that was required, which is why the district court aptly found that Mr. Rinaldo had satisfied at least the spirit, if not the letter of the law, with respect to citation of those documents. Counsel, were the terminating sanctions predicated at all on the suspicion that opposing counsel had provided documents to the police department that had not been disclosed to you? They were not, Your Honor. That argument in the briefs and in the objection before the district court is simply a red herring. The magistrate pointed out in his report and recommendation for case terminating sanctions that he specifically was not basing the appeared in Metro's file, but did not appear in Exhibits 4 and 5 to the opposition to the motion to compel arbitration. And that was because ultimately at the time of the hearing, for the first time, mind you, counsel for Ms. Mayorga indicated that he had never seen those additional 400 documents and he did not know where they came from. So erring on the side of caution, while there's no indication in the Las Vegas Metropolitan Police file that any documents were delivered by anybody but Ms. Mayorga and her counsel, the district court erred on the side of caution and said specifically it would not base case terminating sanctions on the allegation that Ms. Mayorga's counsel had disclosed documents to Metro and then failed to disclose those documents in this case. So that absolutely had nothing to do with the court's decision and really it shouldn't be before the court today. In summary, your honor, I see that I'm running out of time here, but what is before your honors is a case that was built and litigated upon hacked and privileged attorney-client communications and work product. Ms. Mayorga's attempts through counsel to shift blame to Mr. Rinaldo and his counsel quite simply fail, both legally and factually. As the district court succinctly pointed out, and I quote for your honors, in light of the depth and breadth with which the ill-gotten information has saturated her claims and other filings and likely memory of key facts, any other sanction would be an inadequate remedy, end quote. And that's in the record at 1 ER 0042 and 43. We would further submit today that no sanction would be a travesty. And with that, your honors, we would request that the district court's orders at issue before your honors be affirmed in their entirety. Thank you, counsel. Thank you, your honor. Rebotto. Counsel for Rinaldo did not identify any disclosures made between the time the court entered its order finding privilege at CCF 72 and the date that the motion for terminal sanctions was filed at CCF 111. And in fact, it was Rinaldo who, in contrary or in violation of the court's order striking those documents, attached the same documents in support of the motion for terminal sanctions. And those were not redacted or protected in any way. What about after the order was filed? You said between the time that the motion was made and the order was filed. What about after the order was filed? After the order was filed, did you file any pleadings to which you attach those documents? I assume you're asking about the order in which there was a finding of privilege. I'm not asking you about anything in particular. I'm just asking you the question because you made the point to put the line of demarcation as of when that order was filed. But I'm asking you after the order was filed, did you make any filings that included as exhibits those documents? All right. The order that... Yes. Is your answer yes? Ms. Justice, the answer is... I'm a judge, not justice. Okay. After the motion for terminal sanctions was filed, I did file a motion to amend ECF-72. I filed a motion for in-camera examination under Zolan. And I filed an opposition to the motion or a response to the motion. And all of those pleadings referred to the Football League documents. Well, didn't you think that would be in violation of the court's order to not use those, that they were privileged? No. In my view, privilege had been waived by the disclosure of the Football League documents, specifically the ones that had been found to be privileged. That's exhibit four and five of ECF-44. But the district court did not agree with your view of that. So once the district court said that the privilege had not been waived, then why would you think it's okay to nevertheless include those documents in filings after that? Because Rinaldo's lawyers voluntarily disclosed those same documents. They attached them to their motion for terminal sanctions. But counsel, normally the process is that if the court makes a ruling you disagree with, you ask the court to or you appeal to this court, you don't just keep doing what you were doing before, despite the district court's order. I think that's what Judge Rollinson's getting at here. So what is your response to that? The district court said, don't do it. And you said, well, I'm going to continue to do it because here's my reason why, as opposed to just not doing it and appealing the decision. Well, it didn't occur to me to ask the court to find that there was a waiver of privilege when Rinaldo's lawyers voluntarily disclosed those documents. It appeared to me that that was a voluntary disclosure and because they had exhibited those documents, I should be able to respond by referring to those documents and using those documents in my opposition and also in seeking relief on the prior order, finding privilege, and also seeking in-camera relief. They disclosed those documents and that was contrary to the those documents. But you never made that argument to the district court, correct? You just went ahead and did it? I'm sorry. I mean, the point you just made, you said, well, I thought because they did this, therefore the waiver, they since had been waived. You never went back to the district court and said, hey, district court, time out. Here's why I think I can be able to use them because they waived it. You just went ahead and by the way, there was also an earlier disclosure. Their second supplemental rule 26 disclosure to me included all those documents that the court had stricken and found to be privileged. And then in the motion for terminal sanctions, they exhibited them again. And it seemed to me that in response, I should be able to use those documents, which is what I did. Well, in the request for terminating sanctions, they were telling the court, here are the documents that he's put into the record with foulings after you told him not to. So that was to show the court what you were doing. Judge, but that was after they disclosed them themselves. I don't know. I understand your argument. Well, thank you. I would also point out that once again, Rinaldo has denied or disclaimed the authenticity of those documents. I don't know how any sanction can be levered or applied when the documents that issue the proponent of that privilege is saying, we don't know if these documents are original documents and we don't know if they've been modified. And if you look in the record, we don't know if they've been modified or if they've been fabricated and they continue to maintain that position today. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court that completes our calendar for today. We are recessed until 9.30 a.m. tomorrow morning at the lower
judges: RAWLINSON, OWENS, Fitzwater